UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANLEY WILLIAM HUFF,

      Petitioner,

                                CASE NO. 05-CV-73535-DT
v.                                JUDGE PAUL D. BORMAN
                                MAGISTRATE JUDGE PAUL J. KOMIVES

BARRY D. DAVIS,[1]

      Respondent.
                          /

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.     RECOMMENDATION ................................................................. 1
II.    REPORT ................................................................................ 1
     A.    *Procedural History* ......................................................... 2
     B.    *Factual Background Underlying Petitioner's Conviction* ................. 4
     C.    *Procedural Default* ........................................................ 4
     D.    *Standard of Review* ....................................................... 6
     E.    *Analysis* ................................................................... 8
         1.    *Clearly Established Law* ......................................... 8
         2.    *Analysis* ....................................................... 10
              a. DNA Theory ................................................. 10
              b. DNA Method and Statistical Evidence ....................... 12
              c. Harmless Error .............................................. 14
              d. Confrontation .............................................. 14
     F.    *Conclusion* .............................................................. 15
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ......................................... 16

\*    \*    \*    \*    \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.    REPORT:

A.    *Procedural History*

---

[1] By Order entered this date, Barry D. Davis has been substituted for Douglas Vasbinder as the proper respondent in this action.

1.   Petitioner Stanley William Huff is a state prisoner, currently confined at the Newberry Correctional Facility in Newberry, Michigan.

2.   On May 26, 2000, petitioner was convicted of two counts of third degree criminal sexual conduct (CSC-III), MICH. COMP. LAWS § 750.520d, following a jury trial in the Kent County Circuit Court. On August 14, 2000, he was sentenced to two concurrent terms of 11-45 years' imprisonment.

3.   Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

>   I.   THE DEFENDANT WAS DENIED HIS RIGHT TO DUE PROCESS UNDER THE UNITED STATES AND MICHIGAN CONSTITUTION IN THAT HE WAS NOT PERMITTED TO CALL WITNESSES FAVORABLE TO HIM.
>
>   II.  DEFENDANT WAS DENIED A FAIR TRIAL IN THAT DNA TESTS WHICH WOULD HAVE AIDED IN HIS DEFENSE WERE NOT SUBMITTED TO THE JURY.
>
>   III. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE JURY'S VERDICT WHERE THE PROSECUTION DID NO[T] PRESENT ALL THE ELEMENTS OF CRIMINAL SEXUAL CONDUCT FIRST OR THIRD DEGREES.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Huff*, No. 230372, 2002 WL 1747738 (Mich. Ct. App. July 26, 2002) (per curiam).

4.   Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. Petitioner's application for leave to appeal was denied as untimely.

5.   On January 16, 2003, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising claims challenging the failure of the prosecution to conduct a DNA test, the sentencing scoring by the trial court, and the jurisdiction of the district

court with respect to petitioner's bindover. The trial court denied the motion, concluding that petitioner's claims were barred either under MICH. CT. R. 6.508(D)(2) because they had already been decided against him on direct appeal, or under MICH. CT. R. 6.508(D)(3) because they could have been, but were not, raised on direct appeal. *See People v. Huff*, No. 99-09473 (Kent County, Mich., Cir. Ct. Feb. 27, 2003). Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, presenting a single claim for relief:

> DEFENDANT WAS DENIED A FAIR TRIAL [BY] THE PROSECUTION'S PREFERENCE TO APPLY THE THEORY OF THE NATIONAL LEGAL LABORATORIES, INC., RATHER THAN SCIENTIFIC TECHNIQUE OR METHOD.

The Michigan Court of Appeals denied petitioner's application for leave to appeal in a standard order, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Huff*, No. 254132 (Mich. Ct. App. Aug. 20, 2004). Petitioner sought leave to appeal in the Michigan Supreme Court, raising this claim as well as a challenge to his sentence. The Supreme Court denied leave to appeal in a standard order, again based on petitioner's "fail[ure] to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Huff*, 472 Mich. 914, 696 N.W.2d 716 (2005).

6. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on . As grounds for the writ of habeas corpus, he raises the single claim regarding DNA evidence that he raised in the Michigan Court of Appeals in connection with his motion for relief from judgment.

7. Respondent filed his answer on October 12, 2006. He contends that petitioner's claim is barred by petitioner's procedural default in the state courts, and alternatively that petitioner's claim is without merit.

8. Petitioner filed a reply to respondent's answer on November 29, 2006.

3

B.     *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was briefly summarized by the Michigan Court of Appeals:

> Defendant's convictions stem from a sexual encounter at a motel where he resided. The victim alleged that she was locked out of the room where she was staying and, while there, defendant forced her to engage in sexual intercourse. Defendant conceded that a sexual encounter had occurred, and that he had ejaculated, but denied that there was penetration. Defendant asserted that the sexual encounter was consensual, and that the victim was trying to trade sexual favors for crack cocaine.

*Huff*, 2002 WL 1747738, at *1, slip op. at 1.

With respect to the DNA evidence specifically, the prosecution presented two witnesses. Glenn Moore, a forensic scientist with the Michigan State Police, testified as to the contents of the report prepared by Christine Stapleton, another forensic scientist with the State Police. He testified mostly as a chain-of-custody witness, identifying the items tested by the forensic lab and the procedures used. He did not testify as to any results, but indicated that all of a peritoneal wipe, DNA vaginal swabs, peri-rectal swabs, and a portion of the victim's pants were turned over to the DNA unit for further DNA analysis. *See* Trial Tr., Vol. III, at 16-26.

Paul Donald, a forensic scientist with the State Police and a specialist in DNA analytical methods, testified as to the results of the DNA testing. After describing the DNA testing procedures, Donald testified that the DNA found on the victim's pants, peri-rectal swab, vaginal swab, and genitalia wipe of the victim was consistent with petitioner's DNA. *See id.* at 58. He also provided testimony regarding the statistical probability of the DNA matching someone other than petitioner, concluding that the probability was one in 872 billion. *See id.* at 61-63.

C.     *Procedural Default*

Respondent first contends that petitioner's claim is barred by petitioner's procedural default

4

in the state courts, because petitioner failed to raise these claims on direct appeal. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, petitioner first presented his purportedly defaulted habeas claim in his motion for relief from judgment. Michigan Court Rule 6.508, governing motions for relief from judgment, provides that the movant "bears the burden of establishing entitlement to relief." MICH. CT. R. 6.508(D). The rule goes on to provide, in three separately numbered paragraphs, procedural situations in which relief will not be granted: (1) where an appeal relating to the conviction is pending; (2) where the claim has already been ruled upon in a prior appeal or postconviction motion; and (3) where the claim could have been raised in a prior appeal or postconviction motion but was not. *See* MICH. CT. R. 6.508(D)(1)-(3).

The Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR

6.508(D)." The Sixth Circuit has issued conflicting decisions on how, precisely, the courts are to treat this language in analyzing the procedural default issue. *Compare Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) and *Burroughs v. Makowski*, 282 F.3d 410 (6th Cir. 2003), *with Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004). The Court need not address this issue here, however. While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995).

As explained below, petitioner's habeas claim is clearly meritless. Accordingly, the Court should dismiss the claim on that basis, without first addressing the procedural default issue.

D.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication

  of the claim--
    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

  "[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

  By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme]

7

Court's jurisprudence." *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.  *Analysis*

1.  *Clearly Established Law*

Unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional violation.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law

itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994); *see also, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983). This general rule regarding the limited cognizability of evidentiary claims on federal habeas review applies equally to claims based on the allegedly improper admission of scientific evidence. *See, e.g.*, *Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998); *Spencer v. Murray*, 18 F.3d 237, 239 (4th Cir. 1994); *Arnold v. Wyrick*, 646 F.2d 1225, 1228 (8th Cir. 1981); *Albanese v. McGinnis*, 823 F. Supp. 521, 553 (N.D. Ill. 1993). Thus,

> the question is not whether the admission of this evidence was improper under the [rules governing scientific evidence], or whether the evidence was inadmissible on some other state law basis. Rather, the only issue for this Court on habeas review is whether the admission of the evidence denied defendant a fair trial; that is, whether the evidence was "almost totally unreliable" such that "the factfinder and the adversary system w[ould] not be competent to uncover, recognize, and take due account of its shortcomings."

*Coy v. Renico*, 414 F. Supp. 2d 744, 761 (E.D. Mich. 2006) (Rosen, J.) (quoting *Barefoot*, 463 U.S. at 899).

    2.    *Analysis*

Although the heading to petitioner's claim identifies one issue with respect to the DNA evidence, his brief in support of the petition identifies several alleged problems with the DNA evidence which he contends denied him a fair trial. Specifically, petitioner asserts that: (1) he was denied a fair trial by the prosecutor's reliance on an independent company's DNA theory; (2) the DNA testing method was not properly admissible under the rules governing scientific evidence; (3) the statistical DNA evidence was likewise not properly admissible; and (4) he was denied his confrontation rights by Moore's testimony regarding the contents of the report prepared by Christine Stapleton. Each of these claims is without merit. In addition, even if any these errors did occur, they were harmless.

*a. DNA Theory*

Petitioner's principle claim is that he was denied a fair trial by the prosecution's purported reliance on a theory derived by the National Legal Laboratories (NLL) which, petitioner contends, did not comport with established scientific techniques or methods. This claim is apparently based on a report prepared by Marco Scarpetta, Associate Laboratory Director at NLL, which is attached to petitioner's habeas application. Specifically, petitioner's claim focuses on DNA extracted from a wipe of his own genitalia (as opposed to a wipe of the victim's genitalia, which was tested by the State Police). In his report, Scarpetta states:

> An important piece of evidence is not document[ed] in the MSP forensic DNA report. A "genitalia wipe" of Mr. Huff was taken, and the "male" fraction was a match to his DNA profile. In other words, after ejaculation, he had his own semen on his penis. Again, this is not surprising. However, there is no documentation of the "female" fraction from the genital wipe on the MSP report. If the "female" fraction

> were to show a mixture of DNA types from both the suspect and the victim, then that observation would be consistent with the [victim]'s claim of penile penetration. I consulted with both of the scientists who signed the forensic DNA report. They tell me that there was in fact evidence of both litigants' DNA profiles in the "female" fraction of the genital swab. This was not presented in the report because it was what they expected to see. Only if other (unknown) contributors were observed in this "female" fraction would the observation have been reported. The presence of [the victim's] DNA on the genital wipe of Mr. Huff is not proof positive of penile penetration, but it is consistent with penetration.

Despite his argument, however, petitioner has presented no case law suggesting that the prosecution in a criminal case is required to rely on police forensic specialists, and may not retain outside experts. More fundamentally, however, petitioner's claim fails because neither Scarpetta nor anyone else associated with NLL testified at trial, nor was any evidence presented regarding DNA testing of petitioner's genitalia swab. On the contrary, both of the prosecution's DNA witnesses testified on cross-examination that they did not receive or test a wipe of petitioner's genitalia. *See* Trial Tr., Vol. III, at 26-27 (Moore), 66 (Donald). Indeed, petitioner's counsel elicited from Moore that such a swab could have provided evidence of penetration, but was not performed:

> Q:   And that would perhaps [have] provided more specific evidence of whether there was vaginal penetration or not?
> A:   That is a possibility. If there is penile/vaginal penetration, there is a possibility that some vaginal secretions and/or epotheo [sic] cells could be transferred to the penis and subsequent swabbing of the penis and testing for DNA analysis could show a combination or the victim's type on the penile swab.
> Q:   As far as you know, that wasn't done in this case, was it?
> A:   No, sir. As far as I know, it was not.

*See id.* at 27. Petitioner cannot base a claim for relief on the reliability or validity of scientific testing techniques when neither the techniques nor the results were presented to the jury. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this basis.

### b. DNA Method and Statistical Evidence

Petitioner also suggests in his brief that he was denied a fair trial by the use of an unreliable

11

DNA testing method and the admission of unreliable statistical evidence concerning match probabilities of others beside petitioner. These arguments are without merit.

With respect to the method, Donald testified that the DNA was tested using the polymerase chain reaction (PCR) method.[2] *See* Trial Tr., Vol. III, at 48. As another Judge of this Court has recently explained:

> The courts have repeatedly held that the PCR method rests on a sufficiently reliable basis to be admitted under Federal Rule of Evidence 702 or state analogues. *See, e.g.*, *United States v. Trala*, 386 F.3d 536, 541-42 (3d Cir. 2004); *United States v. Boswell*, 270 F.3d 1200, 1204-05 (8th Cir. 2001); *United States v. Shea*, 159 F.3d 37, 41 (1st Cir. 1998); *United States v. Gaines*, 979 F. Supp. 1429, 1433 n.4 (S.D. Fla. 1997) (citing decisions of over 20 state appellate courts). Indeed, several courts, including the Michigan courts, have concluded that "the reliability of the PCR method of DNA analysis is sufficiently well established to permit the courts . . . to take judicial notice of it[.]" *United States v. Beasley*, 102 F.3d 1440, 1448 (8th Cir. 1996); *see also*, *[People v.] Coy*, 243 Mich. App. at 291-92, 620 N.W.2d at 893-94.

*Coy*, 414 F. Supp. 2d at 761-62. Thus, petitioner cannot establish that the DNA testing method was so unreliable that the introduction of the results of that method denied him a fair trial.

With respect to the statistical evidence, Judge Rosen likewise rejected a similar claim in *Coy*, providing reasoning applicable here:

> Petitioner has pointed to nothing to suggest that either the likelihood ratios or the inclusion/exclusion probabilities computed by Lab Corp. are, as a general matter, sufficiently unreliable that their admission violated petitioner's right to a fair trial. These techniques were developed in accord with the National Research Council's 1996 *Evaluation of Forensic DNA Evidence* (usually cited in the case law and literature as *NRC II*). The courts have routinely found that statistical analyses performed pursuant to the standards set forth in *NRC II* are reliable and generally accepted, both as to probability statistics, *see Gaines*, 979 F. Supp. at 1434; *United States v. Shea*, 957 F. Supp. 331, 343 (D.N.H. 1997), *aff'd* 159 F.3d 37 (1st Cir. 1998); *People v. Reeves*, 91 Cal. Rptr. 2d 728, 747-48 (Cal. Ct. App. 2001), and likelihood rations, *see State v. Garcia*, 3 P.3d 999, 1003-04 (Ariz. Ct. App. 1999). More generally, the courts have recognized that "[s]tatistical probabilities are basic to DNA

---

[2] For a description of the PCR method, see *United States v. Hicks*, 103 F.3d 837, 844-45 (9th Cir. 1996).

> analysis and their use has been widely researched and discussed." *United States v. Davis*, 40 F.3d 1069, 1075 (10th Cir. 1994); *see also*, *United States v. Chischilly*, 30 F.3d 1144, 1153 (9th Cir. 1994); *United States v. Bonds*, 12 F.3d 540, 557, 565-66 (6th Cir. 1994); *Reid v. Page*, 47 F. Supp. 2d 1008, 1012-13 (C.D. Ill. 1999); *State v. Loftus*, 573 N.W.2d 167, 174-75 (S.D. 1997).
>   \* \* \* \*
>   To be sure, these methods of DNA testing and statistical analysis have not been universally embraced, and have been subject to extensive criticism. *See, e.g.*, William C. Thompson, *Accepting Lower Standards: The National Research Council's Second Report on Forensic DNA Evidence*, 37 JURIMETRICS J. 405 (1997); Richard Lempert, *After the DNA Wars: Skirmishing with NRC II*, 37 JURIMETRICS J. 439 (1997); David J. Baldwin, *Errors & Misunderstandings in the Second NRC Report*, 37 JURIMETRICS J. 469 (1997). Such scientific debate, however, does not itself require the exclusion of scientific evidence. Even the most long-standing and well-established scientific principles are subject to debate and revision; Einstein's General Theory of Relativity upset three hundred years of understanding of Newtonian mechanics, and after a century of successfully describing the workings of the universe Einstein's theory continues to be hotly debated among scientists. As the Supreme Court has explained, there are "no certainties in science." *Daubert*, 509 U.S. at 590.
>   In short, scientific orthodoxy is required neither for admission of evidence under the Due Process Clause nor for its admission under Rule 702. Here, the DNA evidence and the related statistical analyses were based on reliable and well accepted techniques, and the evidence was subject to extensive cross-examination by petitioner's counsel. It was up to the jury to give the evidence the weight it considered due, and the evidence was not so "totally unreliable" that the jury "w[ould] not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot*, 463 U.S. at 899. Thus, petitioner was not denied a fair trial by the admission of this evidence, and therefore he is not entitled to habeas relief on this claim.

*Coy*, 414 F. Supp. 2d at 762-63. For these same reasons, the Court should conclude that petitioner's challenge to the admission of the statistical evidence in his case is without merit.

### c. Harmless Error

Further, even if there was error in the admission of either the DNA evidence or the statistical evidence, the error was harmless and thus not a basis for habeas relief. In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court ruled that trial error does not entitle state prisoners to habeas relief unless the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id*. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Here, neither

the DNA evidence nor the statistical evidence could have had a substantial and injurious effect on the jury's verdict. As noted above, petitioner admitted to having a sexual encounter with the victim and to having ejaculated during that encounter. The only issues at trial were consent and penetration. With respect to consent, the DNA and statistical evidence obviously had no bearing on the jury's verdict, as that evidence could only shed light on whether there was a sexual encounter, not on whether it was consensual or forced. With respect to penetration, although there was some testimony as to whether the location of petitioner's DNA was such as to demonstrate that penetration had occurred, petitioner's challenges to the DNA and statistical evidence relate solely to issues of identifying the donor of the DNA, an issue which was not pressed by petitioner (and in fact was conceded) at trial. In short, the trial came down to a credibility contest between petitioner (who claimed a consensual encounter not involving penetration) and the victim (who claimed a forced encounter involving penetration). The jury simply chose to believe the victim rather than petitioner. Neither the DNA nor statistical evidence addressed these two issues. Thus, the admission of the evidence, even if erroneous, did not have a substantial and injurious effect on the jury's verdict and petitioner is not entitled to habeas relief.

### *d. Confrontation*

Petitioner also contends that he was denied his Sixth Amendment right to confront the witnesses against him when Moore was permitted to testify regarding the contents of the report prepared by Christine Stapleton, and when that report was admitted into evidence. Specifically, he contends that the report was hearsay which was not admissible under either the business records or public records exceptions to the hearsay rule, *see* MICH. R. EVID. 803(6), (8), and that its admission and Moore's testimony therefore violated his Sixth Amendment right to confront the witnesses against him.

14

Even assuming that the admission of this evidence violated petitioner's right to confront the witnesses against him, the error was harmless. *See Lilly v. Virginia*, 527 U.S. 116, 139-40 (1999) (violation of right to confrontation subject to harmless error analysis). First, any error in the admission of Moore's testimony is harmless for the same reasons discussed above relating to the DNA and statistical evidence. Second, neither the report itself nor Moore's testimony state any conclusions regarding the DNA evidence. Rather, both merely describe the steps taken to prepare the DNA evidence and the sample references taken from petitioner and the victim. *See* Trial Tr., Vol. III, at 16-32. The report and Moore's testimony did nothing more than establish the chain of evidence. Because the testimony did not reflect any conclusions regarding the DNA evidence, and because such evidence was properly admitted through Donald's testimony, any confrontation error in the admission of Moore's testimony was harmless. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that petitioner was not denied a fair trial by the admission of the DNA and statistical evidence. Further, the Court should conclude that any error in the admission of this evidence, or in the admission of Moore's testimony, was harmless in light of petitioner's defense and the evidence presented. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health*

*& Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives  
PAUL J. KOMIVES  
UNITED STATES MAGISTRATE JUDGE

Dated: December 5, 2006

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on December 5, 2006.
>
> s/Eddrey Butts  
> Case Manager